**EXHIBIT 2**

## PRE-CLOSING ESCROW AGREEMENT

THIS PRE-CLOSING ESCROW AGREEMENT (the "Escrow Agreement") dated as of January 12, 2007 by and among Euronet Payments & Remittance, Inc., a North Carolina corporation ("Euronet"), Jose Andres Hernandez Andujar, an individual resident of the Dominican Republic ("Seller"), and U.S. Bank National Association, a national banking association (the "Escrow Agent").

WHEREAS, on the date hereof, Euronet, Seller, Seller's spouse and the Companies entered into that certain Stock Purchase Agreement (the "Purchase Agreement") under which Seller has agreed to sell and Euronet has agreed to purchase from Seller all of the issued and outstanding capital stock of the Companies, in accordance with the terms and conditions of the Purchase Agreement;

WHEREAS, pursuant to the Purchase Agreement and as part of the transactions contemplated thereby, the parties have agreed to enter into this Escrow Agreement and Euronet has agreed to deposit into escrow coincident with the execution and delivery of this Escrow Agreement an amount in cash equal to $26,000,000 to be held, invested, distributed and released by the Escrow Agent in accordance with the provisions hereof; and

WHEREAS, the parties hereto desire to more specifically set forth their rights and obligations with respect to the Escrow Deposit (as defined below) and the holding, investment, distribution and release thereof;

NOW, THEREFORE, in consideration of the mutual covenants hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties intending to be legally bound hereby, agree as follows:

1. Definitions. As used herein, capitalized terms have the meanings set forth in this Escrow Agreement or, where not defined herein, the Purchase Agreement. The rules of construction contained in Section 11.3 of the Purchase Agreement are incorporated herein.

2. Appointment of Escrow Agent. Euronet and Seller hereby appoint and designate U.S. Bank National Association as the Escrow Agent for the purposes set forth herein, and Escrow Agent hereby accepts such appointment.

3. Establishment of Escrow Account.

(a) On the day hereof, Euronet shall deposit an amount equal to $26,000,000 (such amount deposited plus any amounts earned thereon, the "Escrow Deposit"), in cash with the Escrow Agent. The Escrow Agent shall hold, invest, distribute and release the Escrow Deposit in accordance with the following terms and conditions.

(b) The Escrow Deposit shall be invested by the Escrow Agent in accordance with the written directions of Euronet. The Escrow Agent shall maintain a separate investment account for the Escrow Deposit, and maintain records setting forth the dollar amount in such account and any earnings thereon.

(c)     Euronet shall be entitled to all earnings from the Escrow Deposit, including all interest and any gain resulting from the investment of the funds.

(d)     Euronet and Seller acknowledge that regulations of the Comptroller of the Currency grant Euronet and Seller the right to receive brokerage confirmations of security transactions as they occur. Euronet and Seller specifically waive such notifications to the extent permitted by law and acknowledge that they will receive periodic cash transaction statements that will detail all investment transactions.

4.      Release of the Escrowed Sums. The Escrow Agent shall disburse the Escrow Deposit in accordance with the provisions set forth in this Escrow Agreement only as follows:

(a)     (as contemplated by Section 1.2.1 of the Purchase Agreement), in accordance with the joint written instructions of Euronet and Seller; or

(b)     pursuant to (i) an order or judgment of a court of competent jurisdiction after the rights of Euronet and Seller have been fully adjudicated (with all rights of appeal having expired or terminated) by such court or (ii) an order of an arbitrator, in either case as provided for in such order or judgment.

5.      Escrow Agent's Fees. The fees and expenses of the Escrow Agent shall be as set forth on Exhibit A hereto. The fees and expenses shall be paid by Seller. In case of any disagreement or dispute arising under the provisions of this Escrow Agreement, the Escrow Agent shall be entitled to be paid additional reasonable compensation for its extraordinary services hereunder and shall be entitled to prompt reimbursement for all costs and expenses incurred by reason of such disagreement or dispute. Any additional compensation due pursuant to the preceding sentence shall be paid by Seller. If any fees, expenses or costs incurred by, or any obligations owed to, the Escrow Agent hereunder are not promptly paid when due, the Escrow Agent may reimburse itself therefor from the Escrow Deposit and may sell, convey or otherwise dispose of any portion of the Escrow Deposit for such purpose.

6.      Termination. This Escrow Agreement shall terminate upon the earlier to occur of (i) the distribution by Escrow Agent of the Escrow Deposit pursuant to the provisions of this Escrow Agreement, (ii) upon written notification to the Escrow Agent by both Seller and Euronet of the occurrence of the closing of the transactions under the Purchase Agreement (the "Closing") or (iii) the agreement of Euronet and Seller in writing to terminate this Escrow Agreement. Upon the termination of this Escrow Agreement, the Escrow Agent shall promptly comply with the instructions provided in the written notification signed by each of Seller and Euronet. Any termination of this Escrow Agreement shall not affect any of the obligations of Seller or Euronet under this Escrow Agreement arising prior to such termination, including the obligation to pay the Escrow Agent's fees pursuant to Section 5 and 7 hereof.

7.      Escrow Agent.

(a)     The duties and responsibilities of the Escrow Agent shall be limited to those expressly set forth in this Escrow Agreement. No implied duties of the Escrow Agent shall be read into this Escrow Agreement and the Escrow Agent shall not be subject to, or obliged to

recognize any other agreement between, or direction or instruction of, any or all the parties hereto even though reference thereto may be made herein.

(b) In the event all or any part of the Escrow Deposit shall be attached, garnished or levied upon pursuant to any court order, or the delivery thereof shall be stayed or enjoined by a court order, or any other order, judgment or decree shall be made or entered by any court affecting the Escrow Deposit, or any part thereof, or any act of Escrow Agent, Escrow Agent is hereby expressly authorized to obey and comply with all final writs, orders, judgments or decrees so entered or issued by any court; and, if Escrow Agent obeys or complies with such writ, order, judgment or decree, it shall not be liable to Seller or Euronet or to any other person by reason of such compliance.

(c) Escrow Agent shall not be liable to anyone for any damages, losses or expenses incurred as a result of any act or omission of Escrow Agent, unless such damages, losses or expenses are caused by Escrow Agent's willful misconduct or gross negligence. Accordingly, Escrow Agent shall not incur any such liability with respect to (i) any action taken or omitted in good faith upon the advice of counsel for Escrow Agent given with respect to any question relating to the duties and responsibilities of Escrow Agent under this Escrow Agreement or (ii) any action taken or omitted in reliance upon any instrument, including any written notice or instruction provided for in accordance with this Escrow Agreement, not only as to its due execution by an authorized person and as to the validity and effectiveness of such instrument, but also as to the truth and accuracy of any information contained therein that Escrow Agent believes in good faith to be genuine, to have been signed by a proper person or persons and to conform to the provisions of this Escrow Agreement.

(d) The Escrow Agent may consult with legal counsel of its own choosing and shall be fully protected in acting or refraining from acting in good faith and in accordance with the opinion of such counsel.

(e) In the event of a dispute between the parties hereto sufficient in the discretion of Escrow Agent to justify its doing so, the Escrow Agent shall be entitled to tender the Escrow Deposit into the registry or custody of any court of competent jurisdiction, to initiate such legal proceedings as it deems appropriate, and thereupon to be discharged from all further duties and liabilities under this Escrow Agreement. Any such legal action may be brought in any such court as Escrow Agent shall determine to have jurisdiction over the Escrow Deposit. The filing of any such legal proceedings shall not deprive Escrow Agent of its compensation hereunder earned prior to such filing.

(f) Seller agrees to reimburse the Escrow Agent for all reasonable out-of-pocket expenses, disbursements and advances incurred or made by the Escrow Agent in performance of its duties hereunder (including reasonable fees, expenses and disbursements of its counsel). Any additional compensation due pursuant to the preceding sentence shall be paid by Seller.

8. Indemnification of Escrow Agent. Seller and Euronet hereby agree jointly and severally to protect, defend, indemnify and hold harmless the Escrow Agent, its officers, directors, agents and employees from and against any and all costs, losses, claims, damages,

disbursements, liabilities and expenses, including reasonable costs of investigation, court costs and attorney fees, which may be imposed upon or incurred by Escrow Agent in connection with its acceptance of, or appointment as, Escrow Agent hereunder, or in connection with the performance of its duties hereunder, including any litigation arising out of this Escrow Agreement or involving the subject matter hereof; provided, however, that said indemnity shall not cover costs, losses, claims, damages, disbursements, liabilities and expenses arising out of Escrow Agent's willful misconduct or gross negligence. This indemnification shall survive the termination of this Escrow Agreement or the resignation or removal of the Escrow Agent. Without affecting their joint and several indemnification liability to the Escrow Agent under this Section 8, Seller and Euronet agree as among themselves that any such indemnification liability shall be allocated among them on a fair and equitable basis reflecting the merits of their respective positions and the responsibility of each of them for the controversy or other circumstances with respect to which indemnification is required, as determined in accordance with the Purchase Agreement.

9.  Resignation of Escrow Agent. It is understood that the Escrow Agent reserves the right to resign as Escrow Agent at any time by giving prior written notice of its resignation, specifying the effective date thereof, to each other party hereto. Within thirty (30) days after receiving the aforesaid notice, Seller and Euronet shall appoint a successor Escrow Agent to which the Escrow Agent may distribute the funds then held hereunder, less the reasonable fees, costs and expenses (including counsel fees and expenses) to which it is entitled to hereunder which remain unpaid at that time. If a successor Escrow Agent has not been appointed and has not accepted such appointment by the end of such thirty (30) day period, the Escrow Agent may apply to a court of competent jurisdiction for the appointment of a successor Escrow Agent and the fees, costs and expenses (including reasonable counsel fees and expenses) that it incurs in connection with such a proceeding shall be payable by Seller.

10. Notices. All notices provided for hereunder shall be in writing (including facsimile transmission) and shall be deemed to be given: (a) when delivered to the individual, or to an officer of the company, to which the notice is directed; or (b) when delivered by an overnight delivery service (including Federal Express) with receipt acknowledged and with all charges prepaid by the sender addressed as provided in this Section; or (c) when delivered by facsimile communications equipment (and simultaneously sent in accordance with Section 10(b)). Notices shall be directed as follows:

(i)  *If to Euronet, to:*

> Eric Mettemeyer
> Euronet Payments & Remittance, Inc.
> c/o Euronet Worldwide, Inc.
> 4601 College Boulevard, Suite 300
> Leawood, Kansas 66211
> Facsimile: (913) 327-1921

*With a copy to(which shall not constitute notice):*

Jeffrey B. Newman, General Counsel

    Euronet Worldwide, Inc.
    2nd Floor, Devonshire House
    1 Devonshire Street
    London W1W 5DS
    United Kingdom
    Fax: +44-1268-242-224
    Phone: +44-1268-242-262

    with a copy to:

    Scot Hill
    Stinson Morrison Hecker LLP
    1201 Walnut St., Suite 2900
    Kansas City, MO 64106
    Facsimile: (816) 691-3495

 (ii) *If to Seller, to:*

    Jose Andres Hernandez Andujar
    c/o Club Rotorio #28
    Ens. Ozama
    Distrito Nacional
    Dominican Republic
    Facsimile: (809) 686-6633 or (809) 592-3011

    *With a copy to (which shall not constitute notice):*

    Jones Day
    1420 Peachtree Street
    Suite 800
    Atlanta, Georgia 30309-3053
    Facsimile: (404) 581-8330
    Attention: John E. Zamer

 (iii) *If to Escrow Agent:*

    Brian J. Kabbes
    U.S. Bank National Association
    One U.S. Bank Plaza
    Mail Code: SL-MO-T6CT
    St. Louis, Missouri 63101
    Fax: (314) 418-1225

or at such other place or places or to such person or persons as shall be designated by notice by any party hereto. All notices that are delivered to the Escrow Agent by Seller or Euronet must be executed by at least one of the individuals stated on Exhibit B.

11. <u>Entire Agreement; Binding Effect</u>. This Escrow Agreement (along with the Purchase Agreement) and matters and agreements referred to herein and therein contain the entire understanding by and among the parties hereto and shall be binding upon and shall inure to the benefit of the parties hereto, and their respective successors and assigns, provided, however, that no assignment of this Escrow Agreement may be effected without the express written consent of each of the parties hereto.

12. <u>Modification; Assignment; Successor</u>. None of the terms or conditions of this Escrow Agreement may be changed, waived, modified or varied in any manner whatsoever unless in writing duly signed by the parties hereto. This Escrow Agreement may not be assigned by any party except with the prior written consent of the other parties. Any corporation into which Escrow Agent may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which Escrow Agent shall be a party, or any corporation to which substantially all the corporate trust business of Escrow Agent may be transferred, shall, subject to the terms of the Escrow Agreement, be Escrow Agent under this Escrow Agreement without further act.

13. <u>Enforceability</u>. Whenever possible, each provision of this Escrow Agreement shall be interpreted in such manner as to be effective and valid under New York law and consistent with the Purchase Agreement, but if any provision shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Escrow Agreement and, to the extent possible, while giving effect to the provisions of the Purchase Agreement.

14. <u>Governing Law</u>. This Escrow Agreement shall be construed, enforced and administered in accordance with the laws of the State of New York.

15. <u>Headings Descriptive</u>. The headings of the several sections of this Escrow Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Escrow Agreement.

16. <u>Business Day</u>. "Business Day" shall mean a day on which commercial banks in the United States are open for the general transaction of business. If any action or time for performance pursuant to this Escrow Agreement is to occur on any Saturday, Sunday or holiday, such time for action or performance shall be extended to the next Business Day.

17. <u>Execution in Counterparts</u>. This Escrow Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all of which shall together constitute one and the same instrument. This Escrow Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear copies of this Escrow Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Escrow Agreement as to the parties and may be used in lieu of the original Escrow Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

18.   Patriot Act. To help the government fight the funding of terrorism and money laundering activities, U.S. federal law requires all financial institutions to obtain, verify and record information that identifies each Person who opens an account. With respect to each of the parties to this Escrow Agreement, the Escrow Agent may ask for documentation to verify such party's formation and existence as a legal entity. The Escrow Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

19.   Tax Reporting. For tax reporting purposes, all earnings attributable to any portion of the Escrow Deposit will be deemed to be for the account of Seller, unless determined otherwise in accordance with the terms of this Escrow Agreement.

**[SIGNATURES ON THE NEXT PAGE]**

**IN WITNESS WHEREOF**, each of Seller, Euronet and Escrow Agent have caused this Escrow Agreement to be executed by their authorized representatives as of the date first above written.

EURONET PAYMENTS & REMITTANCE, INC.

By: *[signature]*
Name: Eric Mettemeyer
Title: Treasurer


_____
JOSE ANDRES HERNANDEZ ANDUJAR


U.S. BANK NATIONAL ASSOCIATION

By:_____
Name:_____
Title:_____

IN WITNESS WHEREOF, each of Seller, Euronet and Escrow Agent have caused this Escrow Agreement to be executed by their authorized representatives as of the date first above written.

EURONET PAYMENTS & REMITTANCE, INC.

By:_____
Name: Eric Mettemeyer
Title: Treasurer


_____
JOSE ANDRES HERNANDEZ ANDUJAR


U.S. BANK NATIONAL ASSOCIATION

By:_____
Name:_____
Title:_____

**IN WITNESS WHEREOF**, each of Seller, Euronet and Escrow Agent have caused this Escrow Agreement to be executed by their authorized representatives as of the date first above written.

EURONET PAYMENTS & REMITTANCE, INC.

By:_____
Name: Eric Mettemeyer
Title: Treasurer


_____
JOSE ANDRES HERNANDEZ ANDUJAR


U.S. BANK NATIONAL ASSOCIATION

By: *[signature]*
Name:   BRIAN J. KABBES
Title:   Vice President

# EXHIBIT A

## ESCROW FEES & EXPENSES

I.   **Acceptance Fee:**                                                                 $2,500

The acceptance fee includes the administrative review of documents, initial set-up of the account, and other reasonably required services up to and including the closing. This is a flat one-time fee, payable at closing.

II.  **Annual Administration Fee:**                                                       $1,000

Annual administration fee for performance of the routine duties of the escrow agent associated with the management of the account. Administration fees are payable in advance.

III. **Investments:**

No fees are invoiced for standard money market investments or bank deposits, nor are any account level sweep fees charged, provided that the Escrow Agent invests in funds or deposits that are linked to the Escrow Agent's trust accounting system for automatic investment of cash and automatic monthly posting and reinvestment of earnings.

Investments in funds or deposits that are not linked to the Escrow Agent's trust accounting system for automatic investment of cash and automatic monthly posting and reinvestment of earnings are subject to additional charges of no less than $3,000 for establishment of the investment asset plus a $100 charge per purchase, sale, dividend payment or reinvestment of earnings; and provided that if the Escrow Agent uses commercially reasonable efforts to process such purchase, sale, dividend payment or reinvestment of earnings, then if any sums remain uninvested no accrued interest or other compensation will be credited to the account.

IV.  **Out-of-Pocket Expenses:**                                                          At Cost

Reimbursement of expenses associated with the performance of our duties, including but not limited to fees and expenses of legal counsel, accountants and other agents, tax preparation, reporting and filing, publications, and filing fees.

V.   **Extraordinary Expenses:**

Extraordinary services are duties or responsibilities of an unusual nature, including termination, but not provided for in the governing documents or otherwise set forth in this schedule. A reasonable charge will be assessed based on the nature of the service and the responsibility involved. At our option, these charges will be billed at a flat fee or our hourly rate then in effect.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.

For a non-individual person such as a business entity, a charity, a Trust or other legal entity we will ask for documentation to verify its formation and existence as a legal entity. We may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

## EXHIBIT B

## AUTHORIZED INDIVIDUALS AND THEIR SPECIMEN SIGNATURES

If sent by Euronet:

*/s/ Eric T. Mettemeyer*
_____
Eric Mettemeyer


_____
Jeffrey B. Newman


If sent by Seller:


_____
Jose Andres Hernandez Andujar

16/01 2007 TUE 18:04  FAX                                                                    ☒002/002

## EXHIBIT B

## AUTHORIZED INDIVIDUALS AND THEIR SPECIMEN SIGNATURES

If sent by Euronet:

_____
Eric Mettemeyer

*[signature]*
Jeffrey B. Newman

If sent by Seller:

_____
Jose Andres Hernandez Andujar

DB03/800667 0043/7208703.7

# EXHIBIT B

## AUTHORIZED INDIVIDUALS AND THEIR SPECIMEN SIGNATURES

If sent by Euronet:

_____
Eric Mettemeyer

_____
Jeffrey B. Newman

If sent by Seller:

_____
José Andres Hernandez Andujar